# OFFICE OF PERSONNEL MANAGEMENT ET AL. *v.* AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO

No. A–5.   Decided July 5, 1985

CHIEF JUSTICE BURGER, Circuit Justice.

On October 25, 1983, the Office of Personnel Management (OPM) published in final form new personnel regulations

affecting federal employees.[1] The new regulations were intended to allow federal agencies to give more weight to merit and less weight to seniority in personnel decisions. The new regulations were to take effect November 25, 1983.

On November 12, 1983, Congress adopted House Joint Resolution 413 which, in effect, prohibited OPM and several other federal agencies from expending funds appropriated under that resolution "to implement, promulgate, administer or enforce" the new regulations.[2] On November 21, 1983, OPM announced that the new regulations would become effective on November 25, 1983.[3] The announcement stated that no expenditure was required for the new regulations to go into effect and that each federal agency would administer and enforce the regulations without the assistance or oversight of OPM. The implementation of the new regulations was stayed on November 23, 1983, however, by the United States District Court for the District of Columbia,[4] and that stay was affirmed by the Court of Appeals on April 27, 1984.[5] In the Continuing Appropriations Act for 1985, enacted in October 1984, Congress extended the restrictions on the implementation of the new regulations but specifically provided that the restrictions "shall expire on July 1, 1985."

---

[1] 5 CFR pts. 300, 335, 351, 430, 431, 451, 531, 532, 540, 551, 771 (1984). For a discussion of the events leading up to the publication of the new regulations on October 25, 1983, see *National Treasury Employees Union* v. *Devine,* 236 U. S. App. D. C. 22, 23–24, 733 F. 2d 114, 115–116 (1984) *(NTEU).*

[2] H. J. Res. 413, Pub. L. 98–151, 97 Stat. 964.

[3] OPM News Release.

[4] *National Treasury Employees Union* v. *Devine,* No. 83–3322 (DC Nov. 24, 1983) (temporary restraining order); *National Treasury Employees Union* v. *Devine,* 577 F. Supp. 738 (DC 1983).

[5] *NTEU.* In its opinion in *NTEU,* the Court of Appeals affirmed the judgment of the District Court and declared that the new regulations were "null and void" until the barriers erected by Congress to the implementation thereof are removed. 236 U. S. App. D. C., at 28, 733 F. 2d, at 120. Once those barriers are removed, "OPM will be free to . . . implement . . . and enforce the [new regulations]." *Ibid.*

Pub. L. 98–473, 98 Stat. 1963, incorporating by reference provisions of H. R. Rep. 98–993, p. 13 (1984).

On June 28, 1985—some eight months after Congress had finally fixed the date on which the new regulations would become effective and fewer than 72 hours before that effective date—respondent sought a temporary restraining order blocking implementation of the new regulations from the United States District Court for the District of Columbia. In an opinion delivered from the bench the same day, the District Court denied the requested order, noting that respondent had failed to show that irreparable harm would result from denial of the temporary restraining order. The court found that nothing "of any concrete nature [would occur] in the immediately foreseeable future which would be unable to be redressed in some form or another at some later time should the regulations go into effect."

Respondent appealed the decision of the District Court to the Court of Appeals for the District of Columbia Circuit and, at the same time, moved the Court of Appeals to enjoin implementation of the new regulations. On Saturday, June 29, 1985, a motions panel of the Court of Appeals ordered that respondent's emergency motion for injunctive relief be "held in abeyance" and that the District Court hear and decide by July 10, 1985, "any motion for a preliminary injunction." The court ordered "on its own motion," that the effective date of the proposed regulations be stayed until further order of that court. The court observed that respondent "may suffer irreparable injury in the absence of a stay" but did not identify that irreparable injury.

On July 2, 1985, OPM filed with me, as Circuit Justice for the District of Columbia Circuit, an application to vacate the order of the Court of Appeals. I granted the application on July 3, reciting in my order that a memorandum opinion would follow.

The Court of Appeals correctly acknowledged that the established rule is that denials of temporary restraining or-

ders are ordinarily not appealable. The court nonetheless asserted jurisdiction over the District Court's denial of the temporary restraining order in this case, holding that it falls within an exception to the general rule "because . . . [the new regulations] are now scheduled to become effective before any hearing on the preliminary injunction can be held." The court reasoned that because a hearing could not be held before the regulations went into effect, the District Court's denial of the temporary restraining order was tantamount to a denial of a preliminary injunction.

The principal authority relied on by the Court of Appeals in support of this exception to the general rule of unappealability is a footnote in our opinion in *Sampson* v. *Murray*, 415 U. S. 61, 86–87, n. 58 (1974).[6] The footnote from *Sampson* cited by the Court of Appeals merely quotes an opinion of the Court of Appeals for the Second Circuit in *Pan American World Airways* v. *Flight Engineers' Assn.*, 306 F. 2d 840, 843 (1962), to the effect that a temporary restraining order which is continued beyond the statutory period is appealable because it is, in effect, a preliminary injunction. In the present case, however, the District Court *denied* the temporary restraining order; a temporary restraining order was, therefore, not continued beyond the statutory period. The footnote in *Sampson* relied on by the Court of Appeals is simply irrelevant.

The Court of Appeals also relied on its own opinion in *Adams* v. *Vance*, 187 U. S. App. D. C. 41, 570 F. 2d 950 (1978), but this reliance is also misplaced. In *Adams*, the Court of Appeals held that it had jurisdiction over an appeal

---

[6] In *Sampson*, we reversed a decision of the Court of Appeals for the District of Columbia Circuit which upheld a temporary injunction barring the dismissal of a federal employee. We held that loss of income to a dismissed federal employee, even when coupled with damage to reputation resulting from such dismissal, "falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case." 415 U. S., at 91–92.

from a grant of a temporary restraining order because the order in question "did not merely preserve the status quo pending further proceedings, but commanded an unprecedented action irreversibly altering" a delicate balance involving the foreign relations of the United States. *Id.*, at 44, 570 F. 2d, at 953. Again, however, in contrast to *Adams*, the District Court in this case *denied* the temporary restraining order. Its denial merely allows implementation of regulations in accordance with the express intent of Congress. Only if the District Court *granted* the temporary restraining order would it have disturbed the status quo. Moreover, the District Court's grant of a temporary restraining order in *Adams* was extraordinary. It "deeply intrude[d] into the core concerns of the executive branch," *id.*, at 45, 570 F. 2d, at 954, and "direct[ed] action . . . potent with consequences . . . irretrievable," *id.*, at 44, 570 F. 2d, at 953. The consequences of the District Court's order in the present case were not nearly so grave. And the opinion of the District Court explicitly contemplated a prompt hearing on a preliminary injunction. The District Court's denial of the temporary restraining order here was not in any sense a *de facto* denial of a preliminary injunction.[7]

The exception fashioned and relied on by the Court of Appeals is not supported by the authority cited; nor is there any independent basis on which jurisdiction could rest. I therefore conclude that the Court of Appeals had no jurisdiction to review the denial by the District Court of respondent's motion for a temporary restraining order. The Court of Appeals should have dismissed the appeal, thereby allowing respondent to proceed in the District Court on a motion for a preliminary injunction.

---

[7] The Court of Appeals also cited to *Dilworth* v. *Riner*, 343 F. 2d 226, 229–230 (CA5 1965), to support its conclusion that, because the regulations would become effective before a preliminary injunction hearing could be held, the District Court's ruling was immediately appealable. *Dilworth* simply does not support this conclusion.

Possibly to ensure that it would retain jurisdiction over the disposition of the preliminary injunction motion which it ordered the District Court to hear and decide, the panel "held in abeyance" the motion for injunctive relief and issued what it termed an "administrative stay," in effect granting respondent more extensive relief than it had sought from the District Court. However, since the Court of Appeals was without jurisdiction over the appeal from the District Court's order denying the temporary restraining order, the motions panel was necessarily without authority to grant such a stay.

Accordingly, the order of the Court of Appeals is vacated.