# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1387

_____

H&R Block Tax Services LLC

*Plaintiff - Appellant*

v.

Lutgardo Acevedo-Lopez

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 24, 2013
Filed: February 12, 2014

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge

This is a diversity action between H&R Block Tax Services LLC ("Block"), a Missouri company headquartered in Kansas City, and a Puerto Rican franchisee, Lutgardo Acevedo-Lopez. Block appeals a district court order denying Block's motion for a preliminary injunction requiring Acevedo-Lopez to comply with post-termination covenants in the franchise agreement. The district court denied a

preliminary injunction because Block "has not demonstrated that it will suffer irreparable harm if the Court does not issue an injunction." We have jurisdiction to review "orders . . . refusing . . . injunctions." 28 U.S.C. § 1292(a)(1). We conclude the district court's failure to make specific findings and explain its ruling, as Fed. R. Civ. P. 52(a)(2) requires, results in a record that does not "sufficiently inform[ this] court of the basis for the trial court's decision on the material issue." Finney v. Ark. Bd. of Corr., 505 F.2d 194, 212 n.16 (8th Cir. 1974). Accordingly, we vacate the order and remand.

## I.

The record on appeal provides only limited background facts, primarily in the pleadings and in contract documents attached as exhibits to Block's Complaint. In August 2007, Block paid $1,000,000 for the client lists of Acevedo-Lopez's existing tax preparation business in Puerto Rico; Acevedo-Lopez agreed to convert his existing office locations into "Block branded franchise offices" operating under a standard Block Franchise License Agreement, as modified by the parties' Conversion Agreement. The Conversion Agreement provided that Block licensed the client lists to Acevedo-Lopez for use "pursuant to" the Franchise License Agreement. Like the parties' documents, we will refer to that latter agreement as the FLA.

In January 2012, Block loaned Acevedo-Lopez $800,000 to acquire client lists and other assets of a tax advisor doing business at four locations that became additional "Approved Locations" under the FLA. On August 21, 2012, Block sent Acevedo-Lopez a Notice of Breach declaring that he owed $531,405.46 "in overdue royalty payments and other charges" and $30,000 under a prior settlement agreement. The Notice stated that, if Acevedo-Lopez did not cure this breach by September 6, "your franchise agreement(s) will be immediately terminated." On September 11, Block sent Acevedo-Lopez a Notice of Termination stating that, as the overdue amounts remained unpaid, "your FLA is terminated effective as of the date of this

-2-

letter." The Notice demanded payment of the January 2012 loan and "all sums due and owing," immediate delivery to Block of all client lists and data, and compliance with the post-termination covenants in Section 12 of the FLA. Those covenants include a provision that Acevedo-Lopez and his associates shall not for two years "engage in any business which offers any product or service the same as or similar to any Authorized Service in or within 25 miles of the Franchise Territory."

On November 1, 2012, Block filed this action in the Western District of Missouri, asserting five breach of contract causes of action and seeking compensatory damages and preliminary and permanent injunctive relief. Less than one week later, Block filed its motion for a preliminary injunction ordering Acevedo-Lopez to deliver the client lists and other materials he had wrongfully retained and "to refrain from operating any tax return preparation business within 25 miles of his formerly franchised locations." Following service on November 30 and brief extensions granted Acevedo-Lopez to hire local counsel and respond, Acevedo-Lopez filed an answer, counterclaim, and opposition to the motion for preliminary injunction. These pleadings (i) denied that he had breached the FLA because he had complied with "verbal instructions" by named "Executive Officers" of Block to prepare "set-off" calculations; (ii) asserted that Block owed him $350,000 under the January 2012 loan agreement; and (iii) argued that Block would not likely suffer irreparable injury because Acevedo-Lopez was still a franchisee and was available "to perform services as a Block Franchisee until the case was resolved." Eleven days later, without holding an evidentiary hearing, the district court entered the one-page Order being appealed, which stated:

> The Court finds that plaintiff is not entitled to a preliminary injunction after carefully considering the Dataphase factors. See Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109 (8th Cir. 1981). Specifically, plaintiff has not demonstrated that it will suffer irreparable harm if the Court does not issue an injunction.

**II.**

**A.**  On appeal, Block first argues that the district court's Order must be reversed because the court failed to find facts with the particularity required by Rule 52(a)(2).  Though the Rule is stated categorically -- "the court must . . . state the findings and conclusions that support" its grant or denial of a preliminary injunction -- we measure compliance by a practical, not a formalistic, standard:  "the [district] judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts.  Merely indicating the factual basis for the ultimate conclusion will suffice in most cases." Osthus v. Whitesell Corp., 639 F.3d 841, 845 (8th Cir. 2011) (quotations and citations omitted).  The findings required are not jurisdictional. "An appellate court may render a decision in their absence if it feels that it is in a position to do so.  [But] it may not make its own findings of fact." Finney, 505 F.2d at 212 n.16.

Applying this permissive standard, the question is whether the district court's cursory statement that Block failed to demonstrate "that it will suffer irreparable harm" absent a preliminary injunction "sufficed."  The court clarified that it had properly considered the four "Dataphase factors," which are threat of irreparable injury to the movant, the balance between this harm and harm the injunction would inflict, the movant's likelihood of success on the merits, and the public interest. See, e.g., Home Instead, Inc. v. Florence, 721 F.3d 494, 497 (8th Cir. 2013).  Without question the court then focused on an *essential* part of that test.  "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Defense Council, Inc., 129 S. Ct. 365, 375-76 (2008).  But Rule 52(a)(2) still requires a close look at the nature of the lawsuit and the showing of irreparable injury that Block in fact made.

-4-

Franchise termination litigation has been prevalent in recent decades, and motions for preliminary injunctive relief by franchisors and franchisees are a common feature of these lawsuits. A franchisee may persuade the court to grant preliminary relief if termination threatens the total destruction of an established business. On the other hand, the franchisor is often -- but not always -- granted a preliminary injunction if the franchisee has terminated the agreement and continues to use the franchisor's trademarks or trade secrets or is violating a post-termination covenant not to compete by soliciting former customers to abandon established loyalties. See a lengthy review of these authorities in 3 W. Michael Garner, Franch Distrib Law & Prac §§ 17.40-17.41 (2013). Surveying cases where franchisors sought preliminary injunctive relief, the author commented, "Courts have reached very different conclusions about irreparable injury on very similar facts." Id. at § 17.41, p. 284. We review the grant or denial of a preliminary injunction for abuse of the district court's broad discretion. CDI Energy Servs., Inc. v. W. River Pumps, Inc., 567 F.3d 398, 401 (8th Cir. 2009). In these kinds of cases, where the competing equities are seldom obvious and many factors bear on this discretionary decision, particularized findings and reasons are needed for meaningful appellate review.

Here, Block asserted to the district court, in one-page sections of its two supporting memoranda, that Acevedo-Lopez's refusal to return Block's client lists and records, and his continuing to operate "the same tax business, at the same locations, offering the same services, as his previously franchised business," was "a classic instance of irreparable harm." Block submitted no fact affidavit or expert opinion supporting its claim of more than the mere possibility of irreparable injury during the pendency of its lawsuit. The showing was minimal, and "[p]art of the district court's discretion is assessing whether an alleged harm requires more substantial proof." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 320 (8th Cir. 2009) (affirming the denial of a franchisor's preliminary injunction motion). But the types of irreparable injury Block asserted have supported the grant of preliminary injunctive relief in cases such as Emerson Electric Co. v. Rogers, 418

F.3d 841, 845 (8th Cir. 2005) (applying Missouri law), and Acevedo-Lopez submitted no factual affidavit or expert opinion supporting his no-irreparable-injury assertion. Moreover, even if the record permitted us to infer why the district court concluded Block's initial showing of irreparable injury was inadequate, without adequate Rule 52(a) findings and reasons we cannot evaluate whether summary denial of Block's motion without an evidentiary hearing was an abuse of discretion, when other procedural alternatives were clearly available. Thus, we must remand.

**B.** Block further argues that the bare record on appeal so clearly establishes its right to a preliminary injunction that we should direct the district court to enter the requested injunction on remand. Without questioning our power to take this action in an appropriate case, see Maxwell v. Mason, 668 F.2d 361, 362 (8th Cir. 1981), we decline to do so here. The district court made no ruling on three of the four Dataphase factors that must be considered in exercising a court's discretion to grant or deny a preliminary injunction. The minimal record before us suggests that the dispute involves, in substance, a sale-and-lease-back transaction in which buyer-lessor Block seeks the benefit of its bargain following breach of the lease (reflected in Block's standard form FLA), and seller-lessee Acevedo-Lopez contends there has been no breach warranting termination of that lease. Viewed in this light, Block does not seek a preliminary injunction preserving the *status quo*, the basic purpose of such relief. Rather, it seeks a preliminary injunction granting the equitable relief it *may* be granted *if* it prevails on the merits of its contractual claims. This may well oversimplify a complex dispute, but the sparse preliminary injunction record is the result of Block seeking preliminary injunctive relief based on the slimmest of factual showings.

In these circumstances, all four of the Dataphase factors appear to be in doubt, and the discretion of a trial court is clearly needed. If Block pursues its motion on remand, the court would have a number of procedural options for dealing with the issue as the case progresses, some of which would not be immediately appealable.

<u>See</u> Fed. R. Civ. P. 65(a)(2).  For these reasons, we vacate the district court's Order dated February 11, 2013, and remand for further proceedings not inconsistent with this opinion.

_____